**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 11 C 2751 |
| | ) |
| KHALED ABDELRAHMAN MOHD MOHATARE, | ) |
| AHMAD ABDOUL, and | ) |
| KMC INTERNATIONAL, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

The court has reviewed the plaintiff's motion for default judgment against all defendants, the plaintiff's memorandum of law in support of its motion, and the amended complaint. We have entered orders of default against the defendants, but default goes only to the well-pled facts of the amended complaint; we must still consider whether those facts state a claim. See Black v. Lane, 22 F.3d 1395, 1399 (7th Cir. 1994); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688 (3d ed. 1998) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

In 2010, plaintiff, Continental Casualty Company ("Continental"), issued a cargo insurance policy to defendant Khaled Abdelrahman Mohd Mohatare in connection with a shipment of

decorative glass vases.  Continental alleges that Mohatare, along with defendants Ahmad Abdoul and KMC International, Inc., engaged in a scheme to submit a fraudulent insurance claim in connection with the vases, which Mohatare claimed had been damaged in shipment.  After it conducted an investigation, Continental denied the claim.

It is further alleged that Continental paid a claim that Mohatare submitted in 2007 when employing the same fraudulent scheme and that he employed the same scheme in 2008 to defraud another insurance company, Munich Re.  The amended complaint asserts that the defendants used interstate mail and wire communication to transmit false documents to Continental.  It contains claims against all three defendants for engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), the RICO statute (Count I); conspiring to violate RICO under 18 U.S.C. § 1962(d) (Count II); common-law fraud (Count III); violation of the Illinois insurance-fraud statute[1] (Count IV); and unjust enrichment (Count V).  In Counts VI and VII of the amended complaint, which are asserted against Mohatare only, plaintiff seeks declaratory judgments that plaintiff has no duty to pay Mohatare's claim under the insurance policy because the claimed losses are attributable to his willful misconduct and were caused by improper packing of the vases.

---

[1]  The statute was previously at 720 ILCS 5/46-5.  Since July 2011, it has been at 720 ILCS 5/17-10.5.  The relevant provision is the same.

We will begin our discussion with the RICO claims. Under §
1962(c) of RICO, it is unlawful "for any person employed by or
associated with any enterprise engaged in, or the activities of
which affect, interstate or foreign commerce, to conduct or
participate, directly or indirectly, in the conduct of such
enterprise's affairs through a pattern of racketeering activity or
collection of unlawful debt." 18 U.S.C. § 1962(c). Thus, to state
a § 1962(c) claim, a plaintiff must allege that the defendant (1)
conducted or participated in conducting the affairs (2) of an
enterprise (3) through a pattern (4) of racketeering. Sedima,
S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). To satisfy the
"enterprise" element of § 1962(c), a plaintiff must adequately
allege an enterprise, which is "more than a group of people who get
together to commit a pattern of racketeering activity." Richmond
v. Nationwide Cassel L.P., 52 F.3d 640, 645 (7th Cir. 1995)
(internal quotation marks omitted). RICO is not just a conspiracy
statute; the enterprise must have "a structure and goals separate
from the predicate acts themselves." Id.; see also Jennings v.
Emry, 910 F.2d 1434, 1441 (7th Cir. 1990) ("[W]hile the hallmark of
conspiracy is agreement, the central element of an enterprise is
structure."). An enterprise is shown "by evidence of an ongoing
organization, formal or informal, and by evidence that the various
associates function as a continuing unit." Richmond, 52 F.3d at
644.

Counts I and II must be dismissed for failure to state claims for violation of RICO. The amended complaint contains a legal conclusion that Mohatare, Abdoul and KMC (a Michigan corporation whose principals are alleged on information and belief to be "Mohatare and/or Abdoul," Am. Compl. ¶ 4) constitute an "association-in-fact enterprise" "with the common purpose of routinely and regularly carrying out the scheme to defraud . . . namely, submitting fraudulent insurance claims to induce payment of money not due." (Am. Compl. ¶¶ 45-46.) But the complaint is devoid of any factual allegations from which we can make a reasonable inference that there was an ongoing RICO organization with structure, continuity, or goals separate from the alleged scheme to defraud.

Furthermore, all of the claims asserted against Abdoul and KMC (Counts I through V) must be dismissed for failure to state a claim. They are based on alleged fraudulent conduct, but fail to meet the pleading standards of Rule 8, let alone Rule 9(b). There are no allegations, other than legal conclusions, that Abdoul himself or the entity KMC made any misrepresentations to Continental. All that is alleged regarding Abdoul is that he *may* be a principal of KMC; that *Mohatare* claimed that Abdoul was a representative of KMC; that *Mohatare* provided Continental with a fraudulent receipt bearing Abdoul's name; that Abdoul declined to provide documents regarding the shipment when requested by

Continental's claims investigator; and that Abdoul is a relative of Mohatare. Abdoul is not alleged to have been involved in schemes that took place prior to 2010. Similarly, KMC is not alleged to have engaged in any conduct separate from Mohatare's alleged conduct. Plaintiff has alleged nothing more than garden-variety, albeit repeated, fraud by Mohatare, and that is what is deemed to be admitted as a result of Mohatare's default.

As against Mohatare, plaintiff's claims in Counts III-VII are adequately pled, and we will enter a default judgment against him on those counts of the amended complaint. Because we are dismissing the RICO claims, the treble-damages and "cost of the suit" components of the damages claimed by plaintiff will not be included in the default judgment.

It appears from our review of plaintiff's memorandum of law in support of its motion for default judgment that the amount of damages awardable on Counts III and V (the common-law fraud and unjust enrichment counts) is $32,488.13, which represents the $24,492.94 Continental paid to Mohatare on the fraudulent 2007 claim plus &7,995.19 in investigation expenses for the 2007 and 2010 claims. On Count IV, the claim for violation of the Illinois insurance-fraud statute, plaintiff seeks damages in connection with the 2010 claim, which was denied. Under the statute, a claimant is entitled to damages in the amount of twice the value of the property attempted to be obtained, plus reasonable attorneys' fees.

Mohatare made a claim for $162,922.50, so the total amount of damages awardable on Count IV is $325,845.00 ($162,922.50 times 2).

Continental is also entitled to reasonable attorneys' fees in relation to the 2010 claim. It claims a total amount of $81,044.58 for "[a]ttorneys' fees and out-of-pocket expenses incurred as a result of Defendants' RICO violations and insurance fraud." (Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 4.) Continental fails, however, to attach time records to support the fees claimed, to break down the fees by claim, or to indicate how much of this total is for out-of-pocket expenses, which are not recoverable because we are dismissing the RICO claims. In order to recover attorneys' fees, Continental must file a supplemental memorandum in support of its motion that adequately supports its request. It must be tailored to the attorneys' fees incurred on the 2010 claim and supported by time records. Continental is given leave to do so by November 2, 2012. It is also directed to file by the same date a revised proposed default judgment order that incorporates our rulings herein.

DATE:     October 10, 2012


ENTER:    _____

          John F. Grady, United States District Judge